IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RANDY BOSTON, # 185615, | ) Civil Action No. 3:07-2757-GRA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| JON OZMINT, DIRECTOR OF SCDC, | ) |
| Defendant. | ) **REPORT AND RECOMMENDATION** |

Plaintiff, Randy Boston, filed this action under 42 U.S.C. § 1983[1] on August 15, 2007. He is an inmate at the Kershaw Correctional Institution ("KCI") of the South Carolina Department of Corrections ("SCDC"). Defendant is Jon Ozmint, the Director of SCDC.[2] On September 27, 2007, Plaintiff filed an amended complaint. Defendant filed a motion for summary judgment on February 6, 2008. Because Plaintiff is proceeding pro se, he was advised on February 11, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order. On April 1, 2008, the undersigned issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On April 11, 2008, Plaintiff filed a response, and Defendant filed a reply on April 16, 2008.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(l)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] SCDC was originally named as a defendant in this action. On October 23, 2007, the Honorable G. Ross Anderson, Jr., United States District Judge, ordered that SCDC be dismissed as a defendant without prejudice. See Doc. 16.

DISCUSSION

Plaintiff alleges that the grievance policy used by SCDC is mismanaged and does not adequately address inmate concerns. He claims that the placement of triple beds in cells prevents an inmate from sitting upright in his bunk, which could cause injury to an inmate if he awakened suddenly and sat up quickly. Plaintiff alleges that bulk washing of underwear does not clean the clothing properly and the issuing of used underwear to inmates could cause a health and safety problem. Additionally, Plaintiff alleges that not having meaningful work and social programs allows the majority of the inmate population to remain idle all day, which induces negativity and fails to provide the life building skills necessary to deter inmates from repeating their offenses. Defendant contends that he is entitled to summary judgment because: (1) Plaintiff cannot establish that any constitutional rights were violated; (2) Plaintiff cannot demonstrate that his conditions of confinement violate his Eighth Amendment rights; (3) Plaintiff has not exhausted his available administrative remedies;[3] (4) Defendant is entitled to Eleventh Amendment immunity; (5) Defendant is entitled to qualified immunity; and (6) any perceived state law claims should be dismissed under the discretion of the court.

---

[3] It is recommended that Defendant's motion for summary judgment be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Angela Hardin ("Hardin"), the Inmate Grievance Coordinator for KCI, states that Plaintiff never initiated the grievance process as to his claims of the inadequacy of the Inmate Grievance System, the issuance of bulk-washed clothing to inmates, or the lack of available work and social functions. Hardin Aff., Para. 9. Defendant states that for the grievances that Plaintiff filed prior to this action, he either completed only the first step of the two-part procedure, or he withdrew his grievance.

1.	Living Conditions

Plaintiff alleges that there are triple beds in single cells, the spacing from floor to ceiling does not allow one to sit upright in a bunk, and a sudden awakening could result in a serious head injury. He claims that the issuance of used underwear derails health and safety measures to control communicable diseases such as staph infections and bulk washing returns clothing unclean. Plaintiff claims that there is no meaningful work to accommodate the overcrowding, the greater part of the inmate population is idle all day which induces negativity, and there is no social infrastructure to provide life building skills and to deter the chance of repeat offenses. Defendant contends Plaintiff fails to establish that the alleged deprivations were sufficiently serious or that prison officials were deliberately indifferent to establish an Eighth Amendment claim.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994).

A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Plaintiff fails to establish a constitutional claim because he has not shown any serious or significant physical or emotional injury resulting from the alleged conditions. See Strickler, 989 F.2d at 1380-1381. Review of Plaintiff's medical records fails to reveal any serious or significant injury resulting from his alleged conditions. Doris Cook, a Registered Nurse at KCI, states that Plaintiff's medical records contain no indication that Plaintiff has ever complained of or been treated for any head injury or communicable disease. See Doris Cooke Aff. and Exhibit 1 to Defendant's Motion for Summary Judgment. To the extent that Plaintiff alleges a mental or emotional injury from the alleged conditions, his claim fails as he has made no prior showing of physical injury. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[4]

42 U.S.C. § 1997e(e).

---

[4] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

4

Plaintiff fails to establish a claim concerning prison programs including educational, social or rehabilitative programs. See Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988)(state has no constitutional obligation to provide basic educational or vocational training programs to prisoners)(citing Newman v. State of Alabama, 559 F.2d 283, 292 (5th Cir. 1977), rev'd in part on other grounds sub nom., Alabama v. Pugh, 438 U.S. 781 (1978)); Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(individuals serving criminal sentences have no constitutional right to rehabilitation while in prison); McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir.), cert. denied, 423 U.S. 859 (1975) (failure to provide rehabilitation, by itself, does not constitute a violation of Eighth Amendment); Abdul-Akbar v. Department of Corrs., 910 F. Supp. 986, 1002 (D. Del. 1995)(no right to drug treatment, employment, or other rehabilitation, education, or training programs in prison). A plaintiff has no constitutional right to participate in prison programs, so his ineligibility for prison work programs is not a deprivation of constitutional magnitude. See Hewitt v. Helms, 459 U.S. 460 (1983); Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates).

2.     Grievances

Plaintiff alleges that SCDC's grievance system "is a mockery of redress. Grievances filed are very mismanaged at the initial level and other levels prior to agency finality." Amended Complaint at 3. Defendant contends that the SCDC grievance policy provides inmates with an

adequate forum to file complaints and receive responses to their complaints. He further contends that inmates do not have a constitutionally protected right to a grievance procedure.

Plaintiff fails to establish a constitutional claim concerning the grievance system at SCDC. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Further, allegations that Defendant did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

3.  Immunity

Defendant contends that he is entitled to Eleventh Amendment immunity. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes,"

but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.  Thus, Defendant is entitled to Eleventh Amendment immunity from damages in his official capacity.

Defendant also contends that he is entitled to qualified immunity in his individual capacity.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800(1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, supra, at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. l994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights.  Therefore, Defendant is entitled to qualified immunity in his individual capacity.

    4.    State Law Claims

It is unclear whether Plaintiff is attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendant violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 29) be granted.

Respectfully submitted,

Joseph R. McCrorey
May 9, 2008                                             United States Magistrate Judge
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

8

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).